[No. 14924. Department One. November 22, 1918.]

LUCY S. NORTON, *Respondent*, v. THE STATE OF
WASHINGTON, *Appellant*.[1]

EVIDENCE (175-179) — PAROL EVIDENCE TO VARY WRITING — AMBI-
GUITY—SCHOOL TEACHER'S CONTRACT.  A teacher's contract allowing
excuse from work in the summer school without providing the
conditions of such excuse, and providing that the conditions of
services as heretofore existing will prevail the coming year, is so
ambiguous as to admit of parol evidence that it had been the cus-
tom to excuse a teacher only upon his or her request.

SCHOOLS AND SCHOOL DISTRICTS (48-50)—TEACHERS—CONTRACTS—
CONSTRUCTION.  A teacher's contract providing that the teacher shall
forfeit pay for the two summer months when excused "at his own
request" upon two months' notice to the board, leaves excuse from
work optional with the teacher.

Appeal from a judgment of the superior court for
Thurston county, Mitchell, J., entered March 12, 1918,
in favor of the plaintiff, in an action on contract, tried
to the court.  Affirmed.

*The Attorney General* and *John A. Homer, Assist-
ant*, and *C. E. Arney, Jr.*, for appellant.

*Kellogg & Thompson*, for respondent.

CHADWICK, J.—In May, 1916, the board of trustees
of the Bellingham Normal School elected the plaintiff
as a teacher for the year commencing September 1,
1916, and ending August 31, 1917.  The contract is evi-
denced by the notice of election and acceptance fol-
lowing:

"State Normal School, Bellingham, Wash.
"Notice of Election.
"Miss Lucy S. Norton:        July 3, 1916.
"I am directed by the board of trustees to notify
you that at their meeting May 11 you were elected
teacher of the Bellingham State Normal School for

[1]Reported in 176 Pac. 347.

the year, September 1, 1916, to August 31, 1917, at an annual salary of $2,160, payable in 12 equal monthly payments of $180.

"I am also directed to state that the conditions of service, as hitherto existing will prevail the coming year.

"That the school year shall begin on the first Tuesday in September and close about the first of the following June; that the summer session shall begin on the Monday following the annual commencement, and close about the first of the following August.

"That the annual salary of each teacher shall be divided into equal monthly payments.

"That the salary of any teacher shall not be paid for the months of July and August when such teacher is excused from teaching in summer school by the board of trustees.

"That each member of the faculty shall, without prejudice, be entitled to be excused from work in summer session each alternate year.

"This notification of election is made in duplicate. Acceptance of election will be made by signing one copy and returning to registrar.

"Failure to accept within thirty days will be regarded as rejection of election.

"Respectfully yours,

"J. M. Edson, Registrar.

"Election accepted July 20, 1916.

"Lucy S. Norton,

"Signature."

Plaintiff had been employed by the board of trustees since the year 1910, contracts of a similar nature being made from year to year. In May, 1912, the trustees of the several normal schools of the state adopted the following resolutions:

"May 23, 1912.

"To the Members of the Faculty,

"Bellingham State Normal School.

"At a meeting of the boards of trustees and principals of the three normal schools of the state of

Washington, held in Cheney, April 3rd last, the appended resolutions were adopted:

"(1) That the school year shall begin on the first Tuesday in September of each year and close about the first of June following.

"(2) That the summer session shall begin on the Monday following the annual commencement and close not later than August first following.

"(3) That the month of August shall be known as the regular midsummer vacation.

"(4) It shall be the duty of the principals of the three normal schools each year before the publication of the annual catalogues to prepare a uniform calendar for use in all of the normal schools in the state for the following school year.

"(5) The salaries of all teachers regularly employed by the normal schools in the state shall be paid, each year, in twelve equal monthly payments beginning with September; but it shall be understood that the salary of any teacher shall not be paid for the months of June and July, when such teacher, at his own request, is excused by the board of trustees from teaching in the summer session of the institution for that year, and it shall be further understood that each member of any faculty shall, without prejudice, be entitled to be excused from work in the summer session each alternate year, under conditions stated in this paragraph.

"(6) That teachers who may wish to be excused from service in any summer school shall so signify such desire to the principal not later than April 1st preceding the summer session.

"(7) That it is the sense of this meeting that a uniform contract would be advantageous, and that the matter be submitted to Mr. Lund to prepare a draft with a view of having same approved and adopted by each of the normal schools."

The board of trustees of the Bellingham State Normal School notified the members of its faculty, including plaintiff, of these resolutions, saying:

"But I am directed by the trustees in lieu of offering you a contract to notify you of your re-election May 7th, 1912, as a member of the faculty and to ask your acceptance or rejection within two weeks from date hereof. Failure to comply with this request within the time specified will be regarded as a rejection.

" (a) Your election is for the term of one year, commencing September 1, 1912, and ending August 31, 1913.

" (b) Your monthly salary until the first of April, 1913, is to be the same as present and payable in the same manner.

" (c) Your monthly salary from April 1, 1913, to August 31, 1913, is not to be less than at present, but any increase from April 1, 1913, to be contingent upon the amount of funds available under the new millage tax law and the satisfaction of the board of trustees that any increase is justifiable.

" (d) It is understood that the summer school of 1912 shall be of the length and be administered as has been planned for several months and shall in nowise be changed by the action set forth in the resolutions quoted.

"The summer school of 1913 and subsequent summer schools, until further notice, shall be subject to the conditions set forth in paragraph 5 on the preceding page.

"This notification is in duplicate. Attached to and made a part of one copy is a blank form of acceptance. Please sign and deliver to the registrar.

　　　　　"Respectfully yours,
　　　　　　　　"By Order Board of Trustees.
　　　　　　　"J. Wayland Clerk, Registrar."

In the contract made by the trustees with plaintiff for the year 1913 is the following:

"I am also directed to state that the conditions of service as is now existing, viz., those adopted by the normal schools of the state a year ago, and ratified by the board of trustees of this institution, shall prevail the coming year."

Then follow the stipulations as in the present contract. The contracts for the year 1914 employed the same words. The contract sued upon and the contract for 1915 employed the words following: "I am directed to state that the conditions of service as hitherto existing will prevail the coming year." In the spring of 1917, plaintiff and other teachers, who have assigned their claim to her for the purposes of this suit, were notified by the board of trustees that they would be excused from service in the summer school, and the trustees refusing to pay the salary of plaintiff and of her several assignors for the months of July and August, this action was brought to recover the amounts alleged to be due.

It was the theory of the trial judge that the contract was ambiguous and uncertain and called for parol testimony in aid of construction as to that part of the contract providing that "the conditions of services as hitherto existing will prevail the coming year." The resolutions adopted by the trustees of the several normal schools and testimony tending to prove that it had been the custom of the trustees to excuse a teacher only upon his or her request was introduced over the objection of counsel for the defendant, whose theory is that the contract is complete and certain of itself and that, when so treated, there can be no recovery. Counsel would read the contract as if it were "the conditions of service as hitherto existing will prevail the coming year;" that is to say, the conditions are as set out under paragraphs 1, 2, 3, and 4. In other words, that the contract recites in itself the conditions of service.

While to the writer and to JUDGE PARKER the contract seems to be certain and to be capable of construction without reference to other or parol testi-

mony, a majority of the department are persuaded that the theory adopted by the trial judge is correct and that we should adopt that theory in arriving at our conclusion. Before doing so, however, I deem it not out of place to justify our personal opinion that a recovery may be had upon the theory advanced by counsel for defendant; that is, that the contract is not ambiguous, but is certain and sufficient in terms. To reach the conclusion arrived at by counsel we would have to ignore the first essential of the contract, which, being "accepted," became an absolute promise to pay an annual salary of $2,160 in twelve equal monthly payments of $180.

The contract defines a school year as beginning the first Tuesday in September and ending, including the summer school, on or about the first day of the following August. It being the fair intent of the contract that there shall be one month's vacation. It repeats and emphasizes the fact that the annual salary of each teacher shall be divided into equal monthly payments, and this is the phrase that counsel relies on,

"The salary of any teacher shall not be paid for the month of July and August when such teacher is excused from teaching in summer school by the board of trustees."

If this were all of the contract, we would have no difficulty in following counsel, but it is a cardinal principle of statutory construction that contracts must be taken by their four corners and effect given to every stipulation therein contained; that which goes before, as well as that which comes after. This is no more than to say that courts will not tear any part of a contract from its context, but will keep it in its setting and give it weight only as it is influenced by other

provisions. Paragraph three must be read in con-
nection with and, under the rule suggested, as a
part of paragraph four: "Each member of the fac-
ulty shall, without prejudice, be entitled to be excused
from work in summer session each alternate year," so
that the real contract is that each member of the fac-
ulty shall, without prejudice, be *entitled* to be excused
from summer school each alternate year, but the sal-
ary shall not be paid for the month of July and Au-
gust when such teacher is excused from teaching in
summer school by the board of trustees.

Keeping in mind the general obligation of the state
to pay for the services of plaintiff for the period of
one year, and of plaintiff to give her services for the
like term, the word "entitle," in paragraph four of
the contract which provides for a contingency, is sig-
nificant. The word "entitle" is defined by English
in his Law Dictionary: "To confer a claim or right
upon." It implies a privilege to be exercised by the
one for whose benefit the word is used. In *English's
Ex'r v. McNair's Admr's,* 34 Ala. 40, in construing
a law providing that "no married woman is entitled
to letters testamentary, unless her husband consents
thereto," the court said, at page 48:

"It says she is not 'entitled.' She has no claim, no
right to be appointed."

In *People's Trust Co. v. Smith,* 30 N. Y. Supp. 342,
in construing the words "shall be entitled to all the
provisions and privileges of law relating to charitable
institutions," the court said:

"To 'entitle' is defined as 'to give a title, right, or
claim; to give a right to demand or receive; to fur-
nish with grounds for claiming, with a direct object
of the person claiming, and a remote object of the
thing claimed.' It is directly opposed to the idea of
imposing an obligation or limitation, but gives to the

person named a right to demand or receive. Thus, when this corporation was said to be entitled to all the provisions and privileges of law relating to charitable institutions, it was given the right to have and enjoy the provisions and privileges; not to have imposed upon it limitations and disabilities which it did not ask for.''

We find few definitions of the word ''entitle,'' but so far as the courts have dealt with the word, it may be gathered that the word means the granting of a privilege or right to be exercised at the option of the party for whose benefit the word is used, and upon which no limitation can be arbitrarily imposed.

This must be so, for the teacher has bound herself to give her services for twelve months, with the privilege of claiming exemption from the contract in each alternate year if her contract runs for more than one year or from year to year, in which event she will waive her right to claim for the time that she is excused.

But, upon the other theory, to hold that the contract is ambiguous in that the conditions hitherto existing are not set out, is to decide the case. For the moment that we grant the right to receive such testimony we meet the conditions as set forth in the resolutions adopted by the trustees of the several boards and ratified, adopted, and made effective by the trustees of the Bellingham Normal School. Upon this theory, granting that sections four and five of the contract allow a teacher to be excused, and that she will waive her right to payment in the event that she is excused, the conditions upon which she may be excused are not set out; that is, whether upon her request or at the instance of the board, and they thus become a subject of oral testimony. That it was the purpose and intention of the board of trustees of the

three normal schools of the state and the Bellingham State Normal School to leave it optional with a teacher whether she desired to be excused cannot be denied. Section five, after emphasizing that the teacher shall be paid in twelve monthly payments, provides that it is understood that the salary of any teacher shall not be paid for the months of July and August when such teacher, "at his own request," is excused by the board of trustees; and further, it is understood that each member of the faculty shall, without prejudice, be entitled as a matter of right to claim exemption from work in the summer session in each alternate year. To be excused at one's own request negatives the idea of an excuse at the request of another. To protect the board from the possibility of a shortage in teachers it is provided that teachers who desire to be excused from services in the summer school shall signify such desire to the principal not later than April 1st. The option of the teacher is further confirmed by a reference to the action of the board of trustees in adopting and approving these resolutions, wherein they say: "The summer school of 1913 and subsequent summer schools, until further notice, shall be subject to the conditions set forth in paragraph five on the preceding page."

Although the resolutions adopted by the several boards of trustees of the Bellingham State Normal School, together with the record made by the local board, were brought to the attention of the teachers by copy and sent to each of them as evidence of the conditions which would prevail "until further notice," it is not contended that the board ever took any further or subsequent action with reference thereto. So that, the conditions of service being made plain, and the option of the teacher being certain, it follows that the board of trustees are bound by their

contract to pay an annual salary in a certain sum, in monthly payments, unless the teacher "at his own request," to be filed not later than a day certain, shall ask to be excused.

While counsel have cited many authorities to sustain the right of the court to receive testimony where contracts are ambiguous and where one contract refers to another, or to another document, it would be a work of supererogation to review them, for the case must be resolved by the contract itself, and a theory of decision being adopted, the principles applying are too plain for discussion.

The judgment of the lower court is affirmed.

TOLMAN and PARKER, JJ., concur.

MAIN, C. J., concurs in the result.