2024 IL App (2d) 240048-U
No. 2-24-0048
Order filed June 18, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of De Kalb County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 16-CF-706 |
| DAVID WALLS, | ) ) ) | Honorable Marcy L. Buick, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the judgment of the court.
Presiding Justice McLaren and Justice Jorgensen concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We agree with appellate counsel that there is no potentially meritorious basis for appeal. Therefore, we grant counsel's motion to withdraw, and we affirm the trial court.

¶ 2   Defendant, David Walls, appeals from the summary dismissal of his *pro se* petition under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2022)) for relief from his conviction of first-degree murder (720 ILCS 5/9-1(a)(1) (West 2016)) in connection with the shooting death of Debrece Shields. The Office of the State Appellate Defender (OSAD), appointed

to represent defendant on appeal, has moved to withdraw. For the reasons below, we grant the motion and affirm the summary dismissal of defendant's petition.

¶ 3                                                I. BACKGROUND

¶ 4       We detailed the background of this case in *People v. Walls*, 2022 IL App (2d) 200459. We repeat here only the facts necessary to dispose of appellate counsel's motion to withdraw.

¶ 5       At defendant's jury trial, Tilly-Ana Ceriser testified that at around 10:30 p.m. on October 6, 2016, she was in her second-floor apartment at 820 Kimberly Drive in De Kalb when she heard a crackling sound. She initially did not pay much attention to it, but then she heard the sound again and saw a white flash. Looking out a window facing south, she saw an individual wearing a grey or dark-colored hoodie, red boxers, and white pants enter a "tannish brown" four-seat car. The vehicle drove off, proceeding west. Ceriser testified that she saw an individual lying on the ground near a red vehicle. Two police officers were approaching the vehicle.

¶ 6       Keith Ehrke, a detective with the De Kalb police department, responded to a report of shots fired at a parking lot of the apartment complex at 810 and 820 Kimberly Drive. When he arrived, he observed a red Nissan that was stopped but still running. He also observed cannabis, keys, and a shell casing at the rear of the vehicle. There were small amounts of blood at the rear of the vehicle and by the driver's door (the victim of the shooting had been removed from the scene). Ehrke also reviewed a video recording from a surveillance camera in the area. The video showed the Nissan stopping, moving forward, and then stopping again. The driver's door opened, and Ehrke observed "two individuals coming out ***, one down probably about his hands and knees with the second individual behind him." The second individual wore light-colored pants, a dark hooded sweatshirt, and pink or orange underwear (visible between his pants and sweatshirt).

¶ 7     Emily Cavazos testified that on October 6, 2016, she was a Northern Illinois University police officer. At 10:30 p.m. on that date, she and her partner, Nicole Susner, were on foot patrol. Cavazos heard a loud pop coming from north of her location. The parking lot at 810 Kimberly Drive was located to her north. As she and Susner approached the parking lot, Cavazos heard more loud popping sounds and saw smoke and flashes of light coming from behind a red vehicle. As Cavazos and Susner approached the red vehicle, they saw a black male running from behind the vehicle toward a light brown or tan SUV-style vehicle parked in the lot behind 820 Kimberly Drive. That vehicle drove off to the west. Cavazos thought the person she saw running might have had long dreadlocks, but she was unsure. Cavazos then discovered the victim lying on the ground at the rear of the red vehicle.

¶ 8     Nico Griggs testified that on October 6, 2016, he and Norris Davison drove to De Kalb in a Jeep Grand Cherokee. They were going to meet someone known to Griggs as "Head." On the way to De Kalb, they stopped to pick up some marijuana, at which point defendant joined them. Once in De Kalb, they picked up Head and ultimately traveled to 810 and 820 Kimberly Drive to obtain marijuana from someone whom Head contacted. When that individual arrived at the Kimberly Drive address, defendant approached the individual's vehicle. Griggs testified that he heard two gunshots a few seconds apart. Defendant then returned to the Jeep, and they drove off. Defendant said that he shot someone who tried to pull a gun on him. Griggs acknowledged that he had been charged with first-degree murder and unlawful use of a weapon in connection with Shields's death. Griggs entered into an agreement whereby the State would dismiss the murder charge in exchange for his plea of guilty to the weapons offense and his testimony in defendant's case.

¶ 9    De Kalb County sheriff's deputy James Ecklund testified that on October 6, 2016, he observed a gold or tan Jeep SUV stopped on Peace Road. The Jeep had its emergency flashers on. As Ecklund approached, the driver (later identified as Griggs) was exiting the vehicle, and three other individuals (one later identified as defendant) were already standing outside the passenger side. The driver had long dreadlocks and wore a dark shirt and dark pants. Defendant had short hair and wore white or light-colored jeans and a dark sweatshirt. The driver indicated that the vehicle had run out of gas and two passengers were going to get some. Two of the passengers left the scene. Ecklund drove after them and offered them a ride, but they did not appear to want assistance.

¶ 10    Ecklund drove off, but then received a dispatch that the De Kalb police were looking for a tan or gold Jeep that was involved in a shooting. Ecklund returned to the Jeep's location, where he was assisted by sheriff's deputy Marks (first name not given). Marks spoke with Griggs, and Ecklund spoke with defendant. Ecklund noticed that defendant was sweating and his hands were restless. Defendant also avoided making eye contact with Ecklund. Ecklund was instructed to take defendant and Griggs into custody. He learned that two guns had been found on the road near the Jeep. The State later presented evidence that shell casings found at the scene of the shooting had been fired from one of the weapons found near the Jeep.

¶ 11    Blood was found on defendant's pants and shoe. DNA analysis of the blood revealed a mixture of DNA from two individuals. There were major and minor DNA profiles. The major profile matched Shields's DNA profile. The minor DNA profile was compared to DNA samples from defendant and Griggs. Griggs did not contribute to the minor profile. Defendant could not be excluded from having contributed to the minor profile. However, no gunshot residue was found on defendant's body or clothing, and there were no fingerprints on the murder weapon.

¶ 12    Nicole Folz (formerly known as Nicole Susner) testified that she was a patrol officer with the Northern Illinois University Police Department. On October 6, 2016, she was on patrol with Cavazos. At about 10:30 p.m., she heard a loud pop coming from the direction of 820 Kimberley Drive. Folz and Cavazos approached that location on foot. Folz observed a red sedan. She saw some flashes of light and smoke and heard two more pops. She also saw a male crouched behind the red sedan run toward a tan SUV, which he entered from the passenger side. The SUV then drove off. Folz thought the individual who ran toward the SUV had either dreadlocks or a long hood. Defendant did not testify.

¶ 13    The jury found defendant guilty of the first-degree murder of Shields. The jury also found that defendant personally discharged a firearm that proximately caused Shields's death. The trial court sentenced defendant to a 50-year prison term. On direct appeal, we affirmed defendant's conviction and sentence. *Walls*, 2022 IL App (2d) 200459, ¶ 4. Defendant's subsequent *pro se* postconviction petition claimed that (1) the trial court erred in not inquiring into defendant's fitness to stand trial when it was known that defendant suffered from schizophrenia, bipolar disorder, and attention-deficit/hyperactivity disorder (ADHD) and that he was taking medication for "one or two" of those conditions; (2) trial counsel was ineffective for failing to seek suppression of evidence identifying defendant as the shooter and evidence that the murder weapon belonged to defendant; and (3) counsel on direct appeal was ineffective for failing to raise the foregoing issues.

¶ 14    The trial court summarily dismissed the petition, and defendant filed a timely notice of appeal. As noted, OSAD was appointed to represent defendant on appeal.

¶ 15                                II. ANALYSIS

¶ 16    Appellate counsel moves to withdraw under *Pennsylvania v. Finley*, 481 U.S. 551 (1987), and *People v. Lee*, 251 Ill. App. 3d 63 (1993). In his motion, counsel states that he read the record

and found no issue of arguable merit. Counsel further states that he advised defendant of his opinion. Counsel supports his motion with a memorandum of law providing a statement of facts, a list of potential issues, and arguments why those issues lack arguable merit. We advised defendant that he had 30 days to respond to the motion. Defendant did not respond.

¶ 17    Counsel considered arguing that the summary dismissal of defendant's postconviction petition was procedurally or substantively improper. Counsel has concluded that such a challenge has no potentially meritorious basis. We agree.

¶ 18    We first consider whether there were any procedural errors. The Act provides a mechanism for a criminal defendant to obtain relief from a conviction that resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1(a)(1) (West 2022). Without involvement by the State (*People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)), the trial court may enter a written order summarily dismissing a postconviction petition within 90 days after filing and docketing if the court determines that the petition is frivolous or is patently without merit (725 ILCS 5/122-2.1(a)(2) (West 2022)). The written order shall include the trial court's findings of fact and conclusions of law. *Id.* Here, the trial court adhered to these requirements. Accordingly, there is no arguably meritorious basis for a procedural challenge to the summary dismissal of defendant's petition.

¶ 19    We next consider whether the summary dismissal was substantively improper. To survive summary dismissal, "[t]he allegations of the petition, taken as true and liberally construed, must present the gist of a constitutional claim." *People v. Hatter*, 2021 IL 125981, ¶ 24. In his petition, defendant first claimed that the trial court erred by failing to determine whether he was fit to stand trial. Defendant further claimed that he received ineffective assistance of counsel on appeal because counsel failed to raise that issue. "A defendant is unfit if, because of his mental or physical

condition, he is unable to understand the nature and purpose of the proceedings against him or to assist in his defense." 725 ILCS 5/104-10 (West 2016). Section 104-11(a) of the Code of Criminal Procedure of 1963 (*id.* § 104-11(a)) provides:

"The issue of the defendant's fitness for trial, to plead, or to be sentenced may be raised by the defense, the State or the Court at any appropriate time before a plea is entered or before, during, or after trial. When a *bona fide* doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further."

Our supreme court has observed that "[r]elevant factors that a trial court may consider in assessing whether a *bona fide* doubt of fitness exists include a defendant's irrational behavior, the defendant's demeanor at trial, and any prior medical opinion on the defendant's competence to stand trial." *People v. Easley*, 192 Ill. 2d 307, 319 (2000).

¶ 20     The thrust of defendant's claim is that his history of mental illness gave rise to a *bona fide* doubt of his fitness. He does not claim that he displayed any aberrant behavior during the trial court proceedings. According to the presentence investigation report, defendant reported that he was diagnosed at age 13 with ADHD, bipolar disorder, and schizophrenia. However, mental illness does not in itself give rise to a *bona fide* doubt of fitness; "[t]he issue is not mental illness, but whether defendant could understand the proceedings against him and cooperate with counsel in his defense" (*id.* at 323). See *id.* at 322 (diagnosis that, when under extreme stress, the defendant was susceptible to thought and personality disorder, paranoia, and episodic breaks from reality did not render the defendant unfit); *People v. Tuduj*, 2014 IL App (1st) 092536, ¶ 92 (rejecting ineffectiveness claim because the defendant's bipolar disorder would not have alone given rise to a *bona fide* doubt of fitness); *People v. Tilson*, 108 Ill. App. 3d 973, 976 (1982) (indication in the presentence report that the defendant had been diagnosed as a "schizophrenic, paranoid type" did

not give rise to a *bona fide* doubt of fitness). In the absence of any manifestations of unfitness, the claim that defendant's mental disorders gave rise to a *bona fide* doubt of his fitness was frivolous and patently without merit. Accordingly, that claim provides no arguably meritorious basis for challenging the summary dismissal of defendant's petition.

¶ 21    Furthermore, because defendant was not entitled to a fitness hearing, his related claim of ineffective assistance of counsel on direct appeal necessarily fails. As we have observed:

> "Claims of ineffective assistance of appellate counsel are governed by the two-prong test of *Strickland* [*v. Washington*], 466 U.S. 668 [(1984)]. [Citation.]. To succeed on an ineffective-assistance-of-appellate-counsel claim at the [summary dismissal] stage of postconviction proceedings, a defendant must establish that it is arguable that (1) his appellate counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for appellate counsel's errors, the appeal would have been successful." *People v. Delgado*, 2022 IL App (2d) 210008, ¶ 26.

Because the record does not establish a *bona fide* doubt of defendant's fitness, appellate counsel's failure to raise the issue caused no prejudice.

¶ 22    We next consider defendant's claim that trial counsel was ineffective for failing to move to suppress evidence. Defendant contended that, because (1) no witness saw him shoot Shields, (2) no gunshot residue was found on his body or clothing, (3) no fingerprints were found on the murder weapon, and (4) Cavazos and Folz thought that the perpetrator *might* have had long dreadlocks, trial counsel should have moved to suppress evidence that the murder weapon belonged to defendant and that defendant shot Shields. We fail to see how these circumstances warrant suppression of evidence probative of defendant's guilt, *i.e.*, (1) Griggs's testimony, (2) an eyewitness's description of the perpetrator's clothing, which was a reasonably close match for the

clothes defendant was wearing when apprehended, (3) the discovery of the murder weapon near the vehicle in which defendant had been a passenger, and (4) DNA evidence indicating that blood found on defendant's clothing was Shields's blood. Because a motion to suppress would have been futile, defendant suffered no prejudice within the meaning of *Strickland* due to counsel's failure to file such a motion. Likewise, defendant suffered no prejudice due to appellate counsel's failure to argue on appeal that defendant received ineffective assistance from trial counsel.

¶ 23    After examining the record, the motion to withdraw, and the memorandum of law, we agree with counsel that this appeal presents no issue of arguable merit. Thus, we grant the motion to withdraw, and we affirm the judgment of the circuit court of De Kalb County.

¶ 24                          III. CONCLUSION

¶ 25    For the reasons stated, we affirm the judgment of the circuit court of De Kalb County.

¶ 26    Affirmed.