Jack Roy CLAYTON, Appellant,

v.

UNITED STATES of America, Appellee.

No. 16845.

United States Court of Appeals Eighth Circuit.

April 11, 1962.

Rehearing Denied May 4, 1962.

Jack Roy Clayton incarcerated at the United States Penitentiary at Springfield, Missouri filed typewritten brief pro se.

F. Russell Millin, U. S. Atty., and Calvin K. Hamilton, Asst. U. S. Atty., Kansas City, Mo., filed printed brief for appellee.

Before VOGEL, MATTHES, and BLACKMUN, Circuit Judges.

MATTHES, Circuit Judge.

This is an appeal from the order of the Court denying Jack Roy Clayton's application to vacate and set aside judgment and sentence imposed upon him on October 24, 1958.[1]

Criminal charges were instituted against appellant in August, 1958, and in September, 1958, two informations, each in three counts, were filed against appellant, one in the United States District Court for the Eastern District of Texas, Texarkana Division, the other in the United States District Court for the Western District of Arkansas, Hot Springs Division. In Count I of each information appellant was charged with violating Title 26 U.S.C.A. § 4704(a); in Count II with violating Title 26 U.S.C.A. § 4705(a), and in Count III with violating Title 21 U.S.C.A. § 174.[2] Appellant, having been arrested on both charges in the Western District of Missouri, timely initiated action under Rule 20, Federal Rules of Criminal Procedure, 18 U.S. C.A., and caused the cases to be removed to the Western District of Missouri. In the latter district appellant formally waived prosecution by indictment and consented to prosecution by information.

1. Appellant's petition was filed under and pursuant to Title 28 U.S.C.A. § 2255, and raised the issue of his mental competency at the time he entered pleas of guilty and when he was sentenced. Such an issue may properly be raised in a § 2255 motion. Simmons v. United States, 8 Cir., 253 F.2d 909, 912.

2. Title 26 U.S.C.A. § 4704(a) prohibits, among other things, the sale of narcotic drugs except in original stamped package or from original stamped package; § 4705(a) provides that it shall be unlawful to sell narcotic drugs except in pursuance of a written order of the person to whom such article is sold on a form issued by the Secretary; and Title 21 U.S.C.A. § 174 prohibits, among other things, the sale of any narcotic drug with knowledge that the same had been unlawfully imported and brought into the United States.

█ On October 10, 1958, appellant appeared before the Honorable Albert A. Ridge, then District Judge for the Western District of Missouri, and entered a plea of guilty to each count in both informations. The Court deferred sentence pending a pre-sentencing investigation and report.

From shortly after the inception of the criminal charges and at every phase of the proceedings, appellant was represented by George V. Aylward, Jr., an able and experienced lawyer of Kansas City, Missouri, who had been employed by appellant or his wife.

On October 24, 1958, appellant appeared before Judge Ridge for sentencing in accordance with his previously entered pleas of guilty. Both appellant and his counsel, at the invitation of the Court, made extended statements quite obviously designed to invoke the leniency and mercy of the Court.[3] Judgment was then imposed under which appellant was sentenced to a term of ten years in an institution on each count of the information in the case which originated in Arkansas, to run concurrently, and to a term of ten years on each count of the information in the case which originated in Texas, to run concurrently, but to run consecutively to the sentence in the prior case, for a total of twenty years' imprisonment.

It is important to observe that neither appellant nor his attorney on this occasion or at any prior court appearance even remotely suggested to the Court that appellant was insane or otherwise mentally incompetent to understand the proceedings against him or properly to assist in his defense. There is no indication that the United States Attorney had reasonable cause to believe that appellant was suffering from mental illness and certainly nothing had occurred which required the Court on its own motion to cause appellant to be examined.

The question before us was first brought to the attention of the Court in a document filed by appellant, pro se, on October 26, 1960. Therein appellant requested the Court to appoint counsel for him in order that proper action could be instituted for the purpose of securing a determination of his competency at and prior to the pleas of guilty. The Court, treating the document as a motion under Title 28 U.S.C.A. § 2255, acted promptly —on the same day it filed a memorandum recognizing that the motion "presents a factual issue which cannot be ignored by the Court," and requested the Warden of the Medical Center for Federal Prisoners at Springfield, Missouri, where appellant was incarcerated, to furnish the Court with copy of all certifications made by the psychiatric staff of said institution.

In pursuance of said order the Court received records from the Medical Center, and after examination thereof concluded there was no factual basis to support the suggestion that appellant was

---

3. Following the statement made by the defendant, Judge Ridge made this observation: "This Court has had plenty of experience with drug addicts, and I look upon this drug addiction as being a disease that needs treatment by a medical doctor, and I don't think that you or any other person who is not a physician has any right to assume that they can peddle narcotics to those persons so as to alleviate any desire that they may have. The desire that they may have can only lead to their further destruction unless it is medically administered to them in proper quantities, and according to their constitution, and I look upon addiction as being something of that character, that it needs treatment. This Court has always had compassion and sympathy for that kind of people.

"But I have no compassion whatsoever for anyone who enters into the sale of narcotics for profit, such as this pre-sentence investigation establishes that you have done. It might be true that your profits were not as large as might have been represented publicly. But the fact of the matter is that you were making a profit from it, selling large quantities. You have been in this business for over a period of five years, and you were gradually increasing customers from the time that you started with this one man that you said that you had sympathy for because of his particular affliction, up to the time that you were apprehended."

mentally incompetent on the dates in question, and accordingly and on November 10, 1960, denied the motion. The reasons motivating the Court's action appear at length in the memorandum opinion, which is officially reported in 202 F.Supp. 592.[4]

Because of a letter thereafter received from appellant, considered by the Court as a petition for rehearing, the Court, following the teachings of Gregori v. United States, 5 Cir., 243 F.2d 48, and Bishop v. United States, 96 U.S.App.D.C. 117, 223 F.2d 582, vacated and remanded for hearing, 350 U.S. 961, 76 S.Ct. 440, 100 L.Ed. 835, set aside its order of November 10, 1960, appointed George V. Aylward, Jr., to again represent appellant, and directed Mr. Aylward to prepare and file a formal pleading raising the issue of appellant's mental competency to enter a plea of guilty and receive a sentence thereunder. Appellant objected to being represented by Mr. Aylward, the Court vacated the appointment, and appointed J. K. Owens, Esquire, to represent appellant in the § 2255 matter. This action also met with objection from appellant and the order appointing Owens was also vacated and set aside, but before this action was taken, Owens prepared and filed a motion to vacate the judgment and sentence of October 24, 1958. This motion was supplemented by another document apparently prepared by appellant pro se, consisting of 18 typewritten pages. On March 22, 1961, Edward G. Farmer, Esquire, entered his appearance as counsel for appellant, and on April 5, 1961, Mr. Farmer filed another motion to vacate and set aside the judgment and sentence. All of the motions thus filed placed in issue the mental competency of appellant on October 24, 1958.

On March 22, 1961, and again on May 18, 1961, plenary hearings were held on the motion. Appellant and his attorney, Mr. Farmer, were present at both hearings.

The transcript of the proceedings on the hearings, consisting of 185 typewritten pages, has received our careful consideration. In summary, it was established that at approximately 4 o'clock p. m. on October 24, 1958, a Friday, the day of sentencing, appellant arrived at the Federal Penitentiary at Leavenworth, Kansas, and was taken to the medical ward. He was seen by Dr. James L. Baker, chief psychiatrist of the institution, "briefly." The doctor observed that appellant was quite "upset" and nervous and it was his opinion that appellant was presenting an acute situational anxiety reaction and tension. On the following Monday, appellant was examined more thoroughly by Dr. Baker and Dr. Henry R. Passaro, a psychologist at the Leavenworth institution. Dr. Baker testified that on Monday appellant's condition was the result of a situational reaction, that his thinking was normal; that he manifested no symbolic implications, delusional thinking, hallucinations, or ideas of unreality; and that the situational reaction was produced by the twenty-year sentence and entry into Leavenworth. Under questions by the Court, Dr. Baker stated that in his opinion appellant was orientated in all spheres as to time, place, persons and things; that appellant was able to comprehend the charges pending against him and that appellant was competent "within the legal sense of competency."

Dr. Passaro testified that based upon his examination, appellant was "entirely rational" on October 27; that in his opinion on October 24 appellant was

---

4. Although appellant had been an inmate of the Medical Center since January, 1959, we note that the Director of the Bureau of Prisons did not at any time act under Title 18 U.S.C.A. § 4245, and certify that there is probable cause to believe that appellant was mentally incompetent at the time of his trial. This in-action apparently stems from the fact that two doctors at Leavenworth Penitentiary who examined appellant shortly after his arrival there, certified that he was not incompetent, whereas two doctors at the Medical Center had issued contrary reports.

**34**

"mentally competent and this condition that occurred appeared to have been— to have occurred suddenly rather than previous or during the trial."

Appellant began to manifest very disturbed symptoms on Tuesday, October 28—in Dr. Baker's words, "He went into a definite psychotic reaction." On January 9, 1959, Dr. Baker recommended that appellant be transferred to the Medical Center at Springfield, Missouri, and later that month such transfer was made.

Dr. James C. Sturgell, chief of psychiatric service at the Medical Center for Federal Prisoners, Springfield, Missouri, and Dr. John Dickinson, psychiatrist at that institution, testified on behalf of appellant. In Dr. Sturgell's opinion appellant was suffering from acute mental illness when he arrived at the institution in January, 1959, and had continued to be mentally ill since that time; that the underlying mental illness was present on October 10, 1958, but "whether it interfered with his ability to assist in his defense or to understand the proceedings adequately * * I could not say." That in the doctor's opinion appellant was not rational on October 24, that he was suffering from acute schizophrenia, paranoid type, but that condition would not necessarily prevent him from assisting his counsel— "(t)he fact that a person is mentally ill does not make them (sic) incompetent or irresponsible necessarily. It depends upon the degree of the mental illness and the kind of mental illness." It appears that on the morning of the hearing Dr. Sturgell had read for the first time the statement made by the appellant on October 24, 1958, and immediately prior to being sentenced, (this statement appears in the opinion, 202 F.Supp. 592) and in connection therewith the doctor testified: "I certainly would like to make it clear that this information [statement] you are referring to, which was not known to me, does raise some question in my mind as to whether my evaluation is entirely accurate, as of the moment that he was standing in this court room."

Dr. Dickinson corroborated Dr. Baker in the latter's findings and conclusions except, however, Dr. Dickinson was of the opinion that the statement made by the appellant above referred to was "absurd" and showed on its face that it was made by an irrational individual. Dr. Dickinson too expressed an opinion that appellant was not rational when he was before the Court on October 24, 1958, but he did admit that it was "possible" for appellant to understand the nature of the charges against him and to have been of assistance to his counsel in the defense of the case.

At the second hearing counsel for appellant offered Mr. Aylward, appellant's former attorney, as a witness [5]—apparently to establish that Mr. Aylward made no investigation or effort to ascertain appellant's mental condition at and prior to October 10 and October 24, 1958. Mr. Aylward readily admitted that he had not conducted any inquiry of that nature, stating that in his opinion and from his conversations and dealings with appellant "there wasn't any need for it." When appellant's counsel inquired whether from "past dealings or conversations * * * [or] business relations with the defendant" Mr. Aylward could relate to the Court any act which would have bearing on appellant's mental condition, Mr. Aylward stated: "Well, sir, Mr. Farmer, I would say to

5. The District of Columbia Circuit in Gunther v. United States, 97 U.S.App.D.C. 254, 230 F.2d 222, condemned the practice of calling as a witness the defendant's trial counsel at a subsequent proceeding involving the defendant's competency. We note, however, that in Gunther the *Government* offered the former attorney. Here, the appellant offered Mr. Aylward as a witness and elicited testimony that appellant was competent and had fully cooperated with the attorney on the dates in question. In any event, it is quite apparent from the comments made by the Court at the conclusion of the final hearing that its findings were not induced by nor based upon Mr. Aylward's testimony.

the contrary, the defendant to me was beyond the ordinary person that you meet from an intelligence standpoint. Jack [appellant] during the time I knew him, was a hard worker, an aggressive type of fellow, and he was an intelligent person."

At the conclusion of the hearings Judge Ridge, in a statement from the bench, reviewed the case from its inception and observed with respect to appellant's appearance on October 10, 1958, "There was no indication made to the Court at that particular time either from acts or conduct of the defendant before the Court, or by any statement made to the Court, that there was any question whatsoever with reference to the mental competency of the defendant to enter the plea of guilty that he then entered," and thereupon the Court found as a fact that on October 10 appellant was mentally competent to enter the pleas of guilty to the charges pending against him. With respect to October 24, 1958, the Court in summary found that although appellant may have been schizophrenic at that time, nevertheless he was sufficiently rational to understand the proceedings then being had, to consult with his counsel, and to inform his counsel of any fact concerning which he desired the Court to be informed. Based upon the Court's findings the motion to vacate and set aside was denied.

 From the foregoing résumé it plainly appears that this Section 2255 proceeding (civil in nature, Taylor v. United States, 8 Cir., 229 F.2d 826, cert. den. 351 U.S. 986, 76 S.Ct. 1055, 100 L. Ed. 1500), presented an issue of fact for the trial court, namely, whether appellant was "competent" on October 10 and on October 24, 1958, within the meaning of that term as promulgated

by the Supreme Court of the United Statse in Dusky v. United States, 362 U.S. 402, 80 S.Ct. 788, 4 L.Ed.2d 824.[6] It is equally manifest that on this appeal the narrow question is whether the findings of the trial court are clearly erroneous or were induced by an erroneous view of the law. "The findings of the court are presumptively correct and will not be set aside unless clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a), 28 U.S.C." Lipscomb v. United States, 8 Cir., 209 F.2d 831, 834, 835, cert. den. 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, at p. 395, 68 S.Ct. 525, at p. 542, 92 L.Ed. 746.

The pertinent facts and circumstances, which we have heretofore detailed at some length, convincingly repel a successful attack upon the findings which are in controversy in this proceeding. From our painstaking examination of the files, records and proceedings antedating the hearings on the motion, and the evidence adduced at the hearings, we conclude and hold that the findings of the Court are not clearly erroneous but, to the contrary, are supported by substantial evidence.

As we have seen, the appellant was represented by able counsel of his own choosing during the course of the criminal proceedings. The Court with meticulous care safeguarded every right to which he was entitled. The proceedings were regular in every respect; appellant has had his day in court; and is not, under the circumstances shown by this

---

6. In Dusky v. United States, the Court stated: "We also agree with the suggestion of the Solicitor General that it is not enough for the district judge to find that 'the defendant [is] oriented to time and place and [has] some recollection of events,' but that the 'test must be whether he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'"

record, entitled to have the judgment and sentence vacated and set aside.[7]

The order appealed from is

Affirmed.

---

7. From the files it appears that there were 13 orders entered in the district court prior to October 24, 1958, when appellant was sentenced and that since that date there have been 20 orders and filings, all of which support the conclusion that the district court did not summarily dispose of the proceedings but that careful

attention was accorded to appellant's legal rights.