**Walter Carl SPLITT, Petitioner-Appellant,**

v.

**UNITED STATES of America, Respondent-Appellee.**

**No. 16636.**

United States Court of Appeals
Sixth Circuit.

Aug. 23, 1966.

William O. Bertelsman, Newport, Ky. (Court Appointed), on brief for appellant.

Ernest W. Rivers, U. S. Atty., Edwin R. Render, Asst. U. S. Atty., Louisville, Ky., on brief for appellee.

Before WEICK, Chief Judge, CELEBREZZE, Circuit Judge, and CECIL, Senior Circuit Judge.

CECIL, Senior Circuit Judge.

On January 13, 1958, Walter Carl Splitt, petitioner-appellant herein, pleaded guilty to two counts of an indictment involving the robbery of the East Broadway Branch of the First National Bank of Louisville, Kentucky, in violation of Section 2113(a) and (d), Title 18, U.S.C.

On March 19th following, he was sentenced to twenty years' imprisonment on each count of the indictment, the sentences to run concurrently.

Nearly seven years later, on November 21, 1964, the petitioner filed a motion for vacation of sentence under Section 2255, Title 28, U.S.C. A district judge for the United States District Court for the Western District of Kentucky, in which court all of these proceeedings were had, denied the motion without a hearing. This appeal followed.

The basis of the petitioner's motion for vacation of sentence is that before, during and after the commission of the crime, and before, during and after the plea of guilty, he was non compos mentis. The district judge denied the motion for the reason that it appeared conclusively from the motion, files and records in the case that the petitioner was entitled to no relief. It is claimed by the petitioner and on his behalf by his court appointed counsel that the district judge was in error in not granting a hearing on the motion. We are asked to remand the case to the District Court with instructions to conduct an evidentiary hearing.

Section 2255 provides, in part,

"Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall * * * grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto."

We look to the files and records in the case which the district judge had before him at the time he denied the motion

First, he had before him a transcript of the proceedings of the January 13th and March 19th hearings, when the petitioner appeared in the District Court for plea and sentence. On January 13th the district judge very carefully explained to the petitioner his constitutional right to be represented by a lawyer, the seriousness of the charge and even advised him that he had better be represented by counsel. The petitioner said it was not necessary to have a lawyer and voluntarily signed a waiver of counsel. Three times during the explanation by the court he said he understood the charges. In answer to the court's question, he said he was ready to plead and he promptly entered a plea of guilty. At the request of the prosecutor, the imposition of sentence was deferred.

At the time of sentencing, on March 19th, the petitioner was again asked if he wished a lawyer before imposition of sentence, he answered that it would not be necessary. He was advised that before the imposition of sentence, he could withdraw his plea of guilty and enter a plea of not guilty. He stated that he understood this and that he desired to stand on his plea of guilty previously entered.

The prosecutor made a detailed statement of the facts of the commission of the crime. He asked the petitioner if he had any corrections. He said: "There's a few." He made two corrections or statements in mitigation of the part Mrs. Jones, a co-defendant charged with receiving some of the money, played in the robbery. He said that she did not want to take any of the money and that she did not know that he and his co-defendant Marcum intended to rob a bank when they went to Louisville. Neither the petitioner nor Marcum challenged any of the facts relative to the commission of the crime.

In response to the question whether he had anything to say before sentence was imposed, the petitioner said:

"Just a few words, if you please. I'm ashamed to ask for leniency with my lengthy record. The Prosecutor has been very decent. And all I want to say is that Barbara got caught in a chain of circumstances over which she had no control. It seems that when someone like this gets in with guys like me, why, she—there's nothing she can do about it.

"The revolver in her purse, I insisted that she carry that for me in case I would be caught without one somewhere, and you can't just—she wouldn't have never used it, I can

assure you of that. I'm also positive that she's had her fill of this sort of thing.

"That's all I've got to say."

And to the statement of the court, concerning the manner in which he had repaid the privilege of United States citizenship, he said:

"Yes, sir. There's nothing I can say, Your Honor. I'm—I wish it was 25 years ago, and I knew this. But I didn't."

The petitioner was 37 years old and being arraigned in court was not a new experience to him. In 1939, in Akron, Ohio, he received a suspended sentence of one to fifteen years for burglary; in 1940, at Akron, he was sentenced to one to twenty years in Mansfield Reformatory for automobile theft and burglary (he escaped from the reformatory after serving about four months of his sentence); again, in 1940, at Millersburg, Ohio, he was sentenced from two to thirty-five years in the Ohio State Penitentiary for automobile theft and breaking and entering. He was released on parole in 1946 and he served out his parole time on this sentence. In 1948, at Wooster, Ohio, he was sentenced to ten to twenty-five years for armed robbery and shooting to kill. He served nine years of this sentence and was paroled in August 1957, approximately six months before the bank robbery in Louisville. He gave no evidence of any mental incapacity in his two appearances before the court at Louisville. In fact, he had every appearance of completely understanding the charges against him and of appreciating the situation in which he found himself.

In addition, the district judge had before him reports from the Lima (Ohio) State Hospital for the criminally insane and from the Ohio State Penitentiary. It is on these reports together with reports of a mental disturbance in 1960, after he received the within sentence, that the petitioner claims he was incompetent before, during and after the commission of the crime, and before, during and after the plea of guilty.

The petitioner was twice transferred from the Ohio State Penitentiary to the Lima State Hospital, on August 9, 1949, and January 20, 1951. Extensive psychological and psychiatric examinations were given the petitioner by psychiatrists of that institution. All of these reports were before the district judge. These reports are well summarized in a letter,[1] to the United States Attorney from Thomas Israel, case worker, and approved by J. O. Crist, M.D., Superintendent, both of the Lima institution. It is to be noted that both times the petitioner was discharged from the hospital "without

---

1. "This is in reference to your recent request for information concerning the above named individual.

"On August 9, 1949, the patient was received here as a transfer from the Ohio Penitentiary under Section 1890–73. He was admitted at the Ohio Penitentiary as No. 86204, from Wayne County to serve 10–25 years for an Armed Robbery (two counts) and Shooting with Intent to Kill or Wound. The patient was said to have attempted suicide at the Ohio Penitentiary by slashing his arms with razor blades and again by setting fire to his mattress. He is said to have become depressed over his long sentence and was diagnosed there are Manic-Depressive Psychosis, depressed phase. On January 16, 1950, the patient was discharged from here as "without psychosis" and was transferrd to the Ohio Penitentiary.

"On January 20, 1951, the patient was again admitted as a transfer from the Ohio Penitentiary under Section 1890–73. At this time the patient was said to have been depressed and to have had definite suicidal intentions which necessitated his return to this hospital. On October 24, 1951, the patient was discharged as "without psychosis" and was returned to the Ohio Penitentiary.

"Enclosed you will find copies of the patient's psychiatric progress notes, summary, social history, and psychology report. Also enclosed is a copy of the patient's Ohio Penitentiary psychiatric evaluation. This information was formulated on the visit of August 9, 1949, and June 20, 1951.

"Assuring you of our continued co-operation in matters of mutual concern, I am" * * *

psychosis," the last time being October 24, 1951. He was in the Ohio penitentiary approximately six more years before he was paroled and no further trouble was experienced. In fact, there was no further indication of any mental difficulty, until about two years after the sentence in the within case. The petitioner alleges in his motion that in April of 1960 he was certified as being psychotic by two psychiatrists at the United States penitentiary, at Alcatraz. He was ordered committed to the United States Medical Center, at Springfield, Missouri.

In an evaluation from a Lima report under date of September 1, 1949, it was stated: "At present he is in a depression which is thought to be reactive and neurotic rather than psychotic." In a report of July 12, 1951, a doctor stated: "Examiner was unable to demonstrate anything in the nature of psychosis and would suggest a diagnosis of Psychoneurosis, with reactive depression."

The district judge requested the Bureau of Prisons to have a psychiatric examination of the petitioner, in accordance with Section 4245, Title 18, U.S.C., with reference to his mental competency immediately prior to and at the time of his appearance in court, on January 13, 1958, the date on which his plea of guilty was entered. The psychiatrists of the Bureau of Prisons had before them the records of the Lima State Hospital, a record from Atlanta, Georgia, in 1958 and 1959, their own evaluation of an earlier admission at Leavenworth dated January 1, 1961, and January 26, 1961, together with the Springfield, Missouri hospitalization record of 1960 and 1961. They made a report to the court and the district judge had this report before him.

The Bureau of Prisons' psychiatrists reported that the Springfield hospitalization indicated a similar reaction to that evidenced at the time of his hospitalization in Lima, Ohio, a brief reactive type of depressive episode with rapid remission and recovery. They further reported—

"Both on our previous evaluation in 1961 and currently we find no evidence of any psychotic manifestations or any mental condition that would render him incompetent or irresponsible, i. e., legally insane. He is able to relate the circumstances connected with his defense and his trial and hearing back in 1958 in a manner that does not indicate any psychotic distortion or lack of awareness and comprehension. Current mental status examination reveals no significant abnormalities other than the basic sociopathic tendencies of his character disorder.

"Diagnosis: Character Disorder, Sociopathic Personality with a history of a brief reactive depressive episodes in the past.

"It is our opinion that the evidence and our examination would not indicate any psychiatric condition that would of rendered him mentally incompetent immediately prior to and at time of sentencing in January 1958."

The petitioner cites Simmons v. United States, 253 F.2d 909, 911, C.A.8, to the effect that an adjudication of insanity refutes the presumption of sanity and makes out a prima facie case of incompetency. The converse of this is true and in the absence of an adjudication of insanity there is a presumption of sanity. Ashley v. Pescor, 147 F.2d 318, 320, C.A.8; Frame v. Hudspeth, 109 F.2d 356, 358, C.A.10, cert. granted judgment reversed, 309 U.S. 632, 60 S.Ct. 712, 84 L.Ed. 989. This presumption is a rebuttable one but when a person is sane or has been adjudged to be sane he is presumed to be sane until he is proven insane. In the *Simmons, Ashley* and *Frame* cases, supra, there was no adjudication of sanity after the defendants had been adjudged insane.

In the case before us, the petitioner was discharged from the Lima hospital on October 24, 1951, as being without

psychosis. If he had ever been diagnosed as insane, which is questionable, he was not insane after his discharge in October 1951. He is, therefore, presumed to be sane from that time on through the time of the commission of the crime and the time the plea was entered on January 13, 1958. There is nothing alleged in the petitioner's motion which would refute that presumption.

Pate v. Robinson, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815, and Westbrook v. State of Arizona, 384 U.S. 150, 86 S.Ct. 1320, 16 L.Ed.2d 429, cited by counsel in a supplemental reply brief, are not analogous to the case now before us. In both of these cases questions of the defendants' mental capacity were raised at the time of trial. In *Westbrook*, the defendant waived representation by counsel and conducted his own trial in a capital case. In the case before us, the petitioner waived the appointment of counsel, and pleaded guilty. It appears from the transcript of the record before the trial court that his waiver of counsel and plea of guilty were intelligently made after a careful explanation of his rights. The petitioner made no correction in the prosecutor's account of the commission of the crime. The petitioner and his codefendant were identified by several persons in the bank at the time of the robbery. Under these circumstances any other action would have been futile. More than six years before the commission of the crime the petitioner was diagnosed as being without psychosis. No question of mental competence was raised on either of his appearances in court and from his record he would be presumed to be sane.

We conclude that the district judge was right in finding that it appeared from the files and records in the case that the petitioner was entitled to no relief.

The judgment of the District Court is affirmed.