(No. 47443.-

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. CARRIE JEAN HERAL, Appellant.

*Opinion filed January 26, 1976.*

Ralph Ruebner, Deputy Defender, Office of State Appellate Defender, of Elgin (Adam M. Lutynski, of counsel), for appellant.

MR. JUSTICE RYAN delivered the opinion of the court:

Following plea negotiations the defendant, Carrie Jean Heral, entered a plea of guilty in the circuit court of Winnebago County to an indictment charging her with the murder of a 14-month-old boy. The appellate court affirmed the judgment of the circuit court. (25 Ill. App. 3d 806.) We granted leave to appeal.

On August 2, 1972, the defendant, who was then 19 years old, was arrested and charged with the murder of Rodney Stewart Collison, a 14-month-old child. The public defender who was appointed to represent the defendant moved to have her examined to determine her competency to stand trial. Two psychiatrists were appointed, and their preliminary reports were filed with the court shortly thereafter. The reports stated that the defendant showed severe remorse and was depressed with suicidal preoccupation. Both psychiatrists in the preliminary report stated that the defendant understands the nature of the charges against her and is willing and able to cooperate with counsel in her defense.

On August 29, 1972, an indictment was returned charging the defendant with murder, and on September 7, 1972, a competency hearing was held before a jury. The two psychiatrists who had previously been appointed and who had filed their preliminary reports with the court testified. Both stated that the defendant understands the nature of the charges against her and is able to cooperate with counsel in her defense. A matron at the county jail also testified concerning the defendant's behavior since she had been in jail and testified that during this period the defendant had made two attempts to take her own life. The testimony of the psychiatrists also revealed that she had on numerous occasions prior to the date of the homicide in question attempted suicide. The jury returned a verdict finding the defendant competent to stand trial.

Three months later, on December 7, as a result of plea negotiations, the defendant withdrew her plea of not guilty and entered a plea of guilty to the murder charge. Before accepting the plea the court admonished the defendant fully as required by Rule 402 (50 Ill.2d R. 402). During these proceedings the State's Attorney introduced into evidence additional reports of the two psychiatrists who had testified at the September 7 competency hearing. These reports were dated November 7, 1972, and Decem-

ber 4, 1972, and in addition to the information about which these doctors had previously testified and upon which their opinions stated on September 7 were based also included information obtained from examinations by the two doctors subsequent to the September 7 hearing. These reports also considered reports of psychological tests of the defendant both before and after the September 7 hearing. Both doctors found the defendant competent to stand trial.

The State's Attorney also introduced into evidence reports of two psychologists and a neurosurgeon as well as a lengthy psychotherapy progress report concerning the defendant covering a period of time from May 1971 through March 1972.

The trial judge who conducted these proceedings was the same trial judge who had conducted the competency hearing on September 7. Thus at the time the plea of guilty was entered and accepted by the court the judge had the benefit of the preliminary reports of the two psychiatrists, the testimony of the psychiatrists and the matron at the competency hearing on September 7, the updated reports of the two psychiatrists submitted at the plea of guilty proceedings, as well as the reports of the two psychologists, the neurosurgeon and the psychotherapy progress reports. All of these reports and this testimony are contained in the record on appeal.

In this appeal defendant contends that competence to stand trial and competence to plead involve two different levels of mental and emotional capacity, with the required level of the latter exceeding the level of the former. She contends that she has a constitutional right to a separate and specific determination that she is competent to enter a guilty plea. We do not agree.

Defendant places primary reliance on *Sieling v. Eyman* (9th Cir. 1973), 478 F.2d 211. In that case, a State court of Arizona conducted an inquiry into the mental condition of the defendant and found him competent to stand trial.

He then pleaded guilty and was sentenced. The circuit court of appeals, in a *habeas corpus* proceeding, remanded the matter to the State court to determine whether the opinions of medical experts, who had examined defendant within a month before his plea, were sufficient to support a finding that the defendant was competent to plead guilty as well as to stand trial. The court reasoned that the determination that the defendant is competent to stand trial is inadequate because it does not measure the defendant's capacity by a high enough standard.

We find *Sieling* unpersuasive for three reasons: (1) *Sieling* is factually distinguishable; (2) it stands alone and is in conflict with decisions in other circuits and in State courts; and (3) the holding in *Sieling* was based primarily on an overly broad interpretation of *Westbrook v. Arizona,* 384 U.S. 150, 16 L. Ed. 2d 429, 86 S. Ct. 1320.

In *Sieling,* the three psychiatrists appointed to examine the defendant were in agreement that the defendant was insane at the time of the offense. In our case, only one psychiatrist conceded that it is "possible" that at the time of the incident defendant "might" have entered a "transitory dissociative episode." In *Sieling* there was considerable conflict in the opinion of the doctors as to the defendant's ability to assist in his own defense. Here, there was no such conflict and following a hearing the jury found the defendant competent to stand trial. The transcript of the psychiatrists' testimony before the Arizona trial court was not in the record in the Federal *habeas corpus* proceeding, and the circuit court of appeals was not able to say whether the opinions of the experts were sufficient for the trial court to find that the defendant was competent to plead guilty. In our case the record contains not only the testimony given at the competency hearing but also updated reports covering a long period of time down to within a few days of the entry of the plea of guilty. The record reflects defendant's competency to plead guilty even under the more stringent

standards of *Sieling*.

Both before and after *Sieling* it has generally been held that if a defendant was capable of understanding the proceedings and assisting in his own defense he was competent to plead guilty. The competency test for standing trial and pleading guilty were the same. *Wolf v. United States* (10th Cir. 1970), 430 F.2d 443; *Baker v. United States* (8th Cir. 1964), 334 F.2d 444; *Clayton v. United States* (8th Cir. 1962), 302 F.2d 30; *United States v. Valentino* (2d Cir. 1960), 283 F.2d 634; *State v. Hostler* (1973), 109 Ariz. 212, 507 P.2d 974; *United States v. Harlan* (6th Cir. 1973), 480 F.2d 515; *Malinauskas v. United States* (5th Cir. 1974), 505 F.2d 649; *Commonwealth v. Miller* (1973), 454 Pa. 67, 309 A.2d 705; see Comment, *Competence to Plead Guilty: A New Standard,* 1974 Duke L.J. 149, 155.

After the *Sieling* decision the Arizona Supreme Court undertook to distinguish *Sieling* from the cases it was considering. (See *State v. Duggan* (1975), 112 Ariz. 157, 540 P.2d 123; *State v. Vassar* (1975), 111 Ariz. 487, 533 P.2d 544; *State v. Bates* (1974), 111 Ariz. 202, 526 P.2d 1054.) However, in *State v. Contreras* (1975), 112 Ariz. 358, 542 P.2d 17, the Supreme Court of Arizona rejected the reasoning and the holding of *Sieling* and also rejected the defendant's contention that the trial court's finding that defendant was competent to stand trial was not sufficient to support a finding of competency to plead guilty.

We agree that the test of competency must be the same whether the defendant is standing trial or pleading guilty. In *Boykin v. Alabama* (1969), 395 U.S. 238, 23 L. Ed. 2d 274, 89 S. Ct. 1709, the United States Supreme Court pointed out that a plea of guilty waives several Federal constitutional rights: (1) the privilege against compulsory self-incrimination; (2) the right to trial by jury; and (3) the right to confront one's accusers. Defendant argues that waiving these rights requires a

higher level of competency than does standing trial. But defendant fails to realize that at trial he may have to decide whether to waive individually each of the rights he waives collectively by a plea of guilty. (1) At some point he will have to decide whether he should testify in his own behalf thus waiving his fifth amendment right. (2) He may have to decide whether to waive a jury trial and be tried by the court. (3) He may also have to decide whether to waive cross-examination of some or all of the State's witnesses. These are some of the trial decisions he must be competent to make, with the advice and assistance of counsel, and this is encompassed within the meaning of the statutory phrase "assist in his defense." (Ill. Rev. Stat. 1973, ch. 38, par. 104—1.) Thus a finding of competency to stand trial necessarily involves a finding that, with the advice and assistance of counsel, defendant is capable of waiving some or all of his constitutional rights, whether by a plea of guilty or during the course of his trial.

Also, a dual standard of competency might "create a class of semi-competent defendants who are not protected from prosecution because they have been found competent to stand trial, but who are denied the leniency of the plea bargaining process because they are not competent to plead guilty." Comment, *Competence to Plead Guilty: A New Standard,* 1974 Duke L.J. 149, 170.

Additionally, we find *Sieling* unpersuasive because of its interpretation of *Westbrook v. Arizona. Westbrook* is an exceedingly short *per curiam* opinion, the heart of which, as it relates to our defendant's contention, states:

> "Although petitioner received a hearing on the issue of his competence to stand trial, there appears to have been no hearing or inquiry into the issue of his competence to waive his constitutional right to the assistance of counsel and proceed, as he did, to conduct his own defense." (384 U.S. 150, 16 L. Ed. 2d 429, 430, 86 S. Ct. 1320.)

*Sieling* reads into this language the requirement of a higher degree of competence to waive any constitutional rights than is required to stand trial. In *Westbrook,* however, the question involved not only defendant's competence to waive his right to assistance of counsel but also his competence to "proceed, as he did, to conduct his own defense." (384 U.S. 150.) See *Splitt v. United States* (6th Cir. 1966), 364 F.2d 594.

Assuming, *arguendo,* that competency to waive counsel does involve a higher standard, this assumption does not necessarily support a finding that the standard for competency to plead is also higher. Any waiver of counsel is carefully scrutinized "[b]ecause of the importance of the right to counsel in preserving the free exercise of other constitutional rights in the criminal process." Comment, *Competence to Plead Guilty: A New Standard,* 1974 Duke L.J. 149, 158.

The defendant does not challenge the correctness of the jury's finding on September 7, 1972, that she was competent to stand trial. She urges, however, that her history of profound psychological and emotional disturbance, her possible insanity defense, and her then recent suicide attempt all militate in favor of a second hearing. We disagree.

A mere history of psychological disturbance does not necessarily show incompetence. "While a defendant may possess a sociopathic personality and suffer from psychiatric and social disturbances, these circumstances, without more, are not sufficient to raise a *bona fide* doubt as to his competency." (*People v. Hammond* (1970), 45 Ill.2d 269, 277.) "If the defendant does understand the nature and object of the charges against him and can, in co-operation with his counsel, conduct his defense in a rational and reasonable manner, then he is mentally competent to stand trial although upon other subjects his mind may be unsound." (*Withers v. People* (1961), 23 Ill.2d 131, 135.) A defendant may be competent to plead guilty even though he or she may have certain mental or emotional

disturbances. See *People v. Bassett* (1975), 25 Ill. App. 3d 927, 934.

The defendant's conduct since the September 7 competency hearing was fully considered in the reports introduced at the time of the entry of the plea of guilty. These reports reflect a course of conduct, including suicide attempts, similar to that which had previously been testified to by the doctors and considered by the jury. Nothing was brought to the court's attention, nor does the record reflect any change in circumstances which would alert the trial judge to a need for another competency hearing. While it is true that "a trial court must always be alert to circumstances suggesting a change" (*Drope v. Missouri* (1975), 420 U.S. 162, 181, 43 L. Ed. 2d 103, 119, 95 S. Ct. 896, 908), we find nothing in the record which would have justified the court, *sua sponte,* to conduct another competency hearing.

For the above reasons we find that the trial court did not err in accepting the defendant's plea of guilty. The judgment of the appellate court is affirmed.

*Judgment affirmed.*