THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JOSEPH TILSON, Defendant-Appellant.

Second District   No. 81—379

Opinion filed September 7, 1982.

974

G. Joseph Weller and Manuel Serritos, both of State Appellate Defender's Office, of Elgin, for appellant.

Daniel D. Doyle, State's Attorney, of Rockford (Phyllis J. Perko and Nancie S. Hudell, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Following a bench trial, the defendant Joseph Tilson was convicted of robbery and sentenced to a five year term of imprisonment. He appeals, contending that he was denied due process of law when the trial judge failed, *sua sponte*, to hold a hearing to determine his fitness to stand trial and to be sentenced.

Neither the defendant nor the State made a request for a fitness hearing at any time. However, as the defendant claims, because of the fundamental constitutional nature of the fitness requirement, the trial court has a duty to order a fitness hearing *sua sponte* once facts are brought to the judge's attention which raise a *bona fide* doubt of the accused's fitness to stand trial or be sentenced. (*People v. Murphy* (1978), 72 Ill. 2d 421, 430.) Fitness to stand trial or to be sentenced is judged by the ability of the accused to understand the nature and purpose of the proceedings against him and his ability to assist in his defense. (Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—10.) Fitness implicates only the accused's ability to be fit for trial; it does not refer to sanity or competence in other areas. *People v. Murphy* (1978), 72 Ill. 2d 421, 432-33.

From our review of the record in this case we conclude that the trial court was not presented with sufficient facts to create a *bona fide* doubt either of defendant's fitness to stand trial or be sentenced. Defendant's conduct at trial was rational. He testified in his own behalf and appeared to answer the questions of the attorneys coherently

and directly, and in a manner to indicate that he understood the questions posed and the gravity of the charge. (See *People v. Riley* (1980), 89 Ill. App. 3d 438, 441; *People v. Bivins* (1981), 97 Ill. App. 3d 386, 390.) Furthermore, the version of the facts underlying the robbery which was contained in defendant's statement to the police and which he articulated at trial discloses his understanding of the charge. The defense relies substantially upon defendant's statement in explanation of why he said to the victim, "if you don't give him [the co-defendant] the $20 and let him go, we'll both kill you," that he was using his own "freedom of self and self-psychology." The statement standing alone seems somewhat incomprehensible, but is given reasonable meaning when viewed in the context of the defendant's further explanation that he did not mean that he would kill the victim but thought the victim lied when he said he had no money and that this was his method of making the man tell the truth.

■ At the sentencing hearing the presentence report disclosed for the first time that defendant had been evaluated for fitness to stand trial on unrelated past charges. However, there was no indication that defendant had previously been found unfit to stand trial. The report also disclosed that the defendant was classified as a schizophrenic, paranoid type and had a five-year history of mental health treatment. However, we conclude that defendant's psychological problems as disclosed in the presentence report were not of such a nature and magnitude as to render him unfit to stand trial or to be sentenced. See *People v. Heral* (1976), 62 Ill. 2d 329, 336.

■ The defendant, however, has placed his primary reliance on disclosure in the presentence report that the defendant had been receiving biweekly injections of the drug prolixin decanoate to manage his psychotic disorder during his incarceration and that the jail nurse was in frequent contact with the mental health center. A defendant may be tried and sentenced where prescribed medication is used to maintain his fitness. (*People v. Dominique* (1980), 86 Ill. App. 3d 794, 804.) We are satisfied from this record of the trial that defendant's mental capabilities were sufficiently maintained by the use of the prescribed medication.

But defendant has further urged that the trial court was obligated to hold a fitness hearing pursuant to section 104—21(a) of the Illinois Code of Criminal Procedure effective December 28, 1979. The statute provides, in substance, that "[a] defendant who is receiving psychotropic drugs or other medications under medical direction *is entitled* to a hearing on the issue of his fitness while under medication." (Emphasis added.) Ill. Rev. Stat., 1980 Supp., ch. 38, par. 104—21(a).

We have been unable to discover any case construing the word "entitled" in a criminal context. The common dictionary definition of "entitled," however, is "to give a right or legal title." (Webster's Third New International Dictionary 758 (1971).) The word "entitled" has been construed in a civil context as giving a right or privilege and implying a choice. (*Dasher v. Bruno* (1955), 5 Ill. App. 2d 500, 504.) Stated differently, the word "entitled" signifies the granting of a right or privilege to be exercised at the option of parties for whose benefit it is used; it is directly opposed to the idea of imposing an obligation or limitation. *Norton v. State* (1918), 104 Wash. 248, 255, 176 P. 347, 349.

We know of no decisions which have construed the legislative intent manifested in the enactment of section 104—21(a). The section appears to be the only section of the Code of Criminal Procedure which expressly refers to a hearing on the existence of a single stated condition, the use of psychotropic drugs "or other medications" under medical direction.[1] The legislature must be credited with some purpose in enacting the specific statute. In our view, the manifest purpose appears to be to emphasize that the use of such drugs may signal a defendant's incompetence to stand trial unless, as we have noted from previous decisions, their use is shown, in fact, not to inhibit a defendant's fitness.

■ Based on these conclusions we consider the merits of defendant's argument that the statute required the trial judge to conduct a fitness hearing when, at sentencing, he became aware for the first time that defendant was using psychotropic drugs under medical direction; and the State's argument that the "right" was waived. A reviewing court, of course, may relax the rule of waiver and consider errors which have not been properly preserved for appeal to protect substantial rights of an accused. (*People v. Jackson* (1981), 84 Ill. 2d 350, 359-60; 73 Ill. 2d R. 615(a).) In this case we consider the right a substantial one but nevertheless conclude that the proceedings in the

---

[1]There was no evidence presented in the trial court that prolixin decanoate, the drug which the defendant had been receiving, was a psychotropic drug. The defendant attempts to establish this by reference to pharmacological authority appended to his brief in an appendix. However, the authority itself was not shown. It appears that drugs used in the treatment of psychiatric disorders are often collectively referred to as psychotropic drugs. (Goodman and Gilman, The Pharmacological Basis of Therapeutics 391 (6th ed. 1980).) In particular, prolixin decanoate is an antipsychotic agent which is used to manage psychotic disorders and to suppress or control the clinical manifestations of schizophrenia. (Kastrup, Facts & Comparison, Central Nervous System Drugs 265, 265(a) (1981).) We have considered in this opinion that the drug is a psychotropic drug, or a similar type of medication.

trial court assure that the failure to conduct the special hearing did not prevent defendant from receiving a fair trial, and that the rule of waiver should not be relaxed.

We consider the legislative intent in the enactment of section 104—21(a) to be a recognition that a person who is receiving psychotropic medication is in a more disadvantageous position than a defendant who merely was institutionalized for psychiatric evaluation, care and treatment without the use of mind-affecting drugs. However, we do not view that the legislative intent is to remove the right of a trial judge to exercise all discretion when he is possessed of sufficient information to assure that the particular defendant is fit to stand trial and to be sentenced. Where, for example, the defendant's use of psychotropic or similar medication is made known to the trial judge before he has any real opportunity to assess defendant's fitness, the proper exercise of discretion would appear to indicate that he must, *sua sponte*, conduct a hearing. But, where as here, the entire trial has proceeded with no *bona fide* indication to the trial judge that the defendant is unfit, no request for a hearing is made, nor is the circumstance of the defendant's taking the medication even made known to the trial judge until after the trial, the exercise of discretion must be differently viewed. Here, the judge not only had the information in the presentence report, he had viewed the defendant in the conduct of a complete trial and could also place some weight on the failure of the defendant or his counsel to raise the issue of fitness. He could further observe defendant's obvious awareness of the nature and severity of the charge at the sentencing hearing and his ability to cooperate with trial counsel. Little, if any, more information could be gained by a formal fitness hearing at this stage. In these circumstances we find no improper exercise of the court's discretion in failing, *sua sponte*, to conduct a fitness hearing.

The judgment of the trial court of Winnebago County is therefore affirmed.

Affirmed.

LINDBERG and NASH, JJ., concur.