THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GERALD KESSLER, Defendant-Appellant.

Second District   Nos. 81—317, 81—318 cons.

Opinion filed March 21, 1983.—Rehearing denied April 25, 1983.

G. Joseph Weller, Josette Skelnik, and Mary Robinson, all of State Appellate Defender's Office, of Elgin, for appellant.

James Williams, State's Attorney, of Mt. Carroll (Phyllis J. Perko and Gene Armentrout, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

Gerald Kessler appeals from the denial of his motion to withdraw his pleas of guilty to the offenses of criminal damage to State-supported property (Ill. Rev. Stat. 1981, ch. 38, par. 21—4), and to driving while under the influence of intoxicating liquor (Ill. Rev. Stat. 1979, ch. 95½, par. 11—501(a)). He seeks also to vacate the conviction and sentence of one year's probation on the criminal damage

charge and 10 days in the county jail for the charge of driving while intoxicated. He contends that his prior adjudication as an incompetent created a *prima facie* presumption of unfitness to stand trial; that the trial court erred in failing to inquire into his fitness before accepting his plea; and that his plea was not knowingly and understandingly made.

The bystander's report shows that on April 28, 1981, the judge informed the defendant, who appeared *pro se*, of his right to counsel, to be appointed if he were indigent, of the nature of the charges, the range of penalties, and his right to plead not guilty and to have a trial. After defendant said he wished to plead guilty to both charges the court stated that defendant would be giving up his right to representation by an attorney and his right to a trial. The defendant answered that he understood. The defendant read the written guilty plea forms and signed them. After finding a sufficient factual basis for the pleas, judgments of conviction were entered.

On May 1, 1981, defendant's then attorney filed a motion to withdraw the defendant's guilty plea. At this hearing defendant admitted that he had been advised of his rights and said that he had understood the charges "pretty well."

In response to a further question defendant said that he did not take care of his own affairs, that his conservator manages his affairs, but that he took care of himself "a little bit" and that the conservator managed only his money.

Defense counsel has filed proof of the petition and order resulting in the appointment of a conservator for defendant on May 31, 1977. The order generally states that the defendant "is an incompetent as defined in Section 11—2 of the Probate Act[1] and incapable of managing his estate."

Neither the defendant nor the State made a request for a fitness hearing at any time. However, because of the fundamental constitutional nature of the fitness requirement, the trial court has a duty to order a fitness hearing *sua sponte* once facts are brought to its attention which raise a *bona fide* doubt of the accused's fitness. (*People v. Murphy* (1978), 72 Ill. 2d 421, 430; *People v. Tilson* (1982), 108 Ill. App. 3d 973, 975.) The statutory provision in effect during

---

[1]Ill. Rev. Stat. 1977, ch. 110½, par. 11—2. The statute defines incompetent to include (a) a person who because of among other matters mental illness or mental retardation "is incapable of managing his person or estate" and (b) a person because of various factors not including mental illness so spends or wastes his estate. The adjudication order fills out a blank part of the form, stating Kessler is incapable of managing "*his estate.*"

the course of the proceedings below provided that the defendant, the State, or the court may raise the question of the accused's fitness to stand trial and be sentenced at any appropriate time before, during, or after trial. "When a bona fide doubt of the defendant's fitness is raised, the court shall order a determination of the issue before proceeding further." (Ill. Rev. Stat. 1981, ch. 38, par. 104—11(a); *People v. Barnard* (1981), 95 Ill. App. 3d 1132, 1135.) Whether a *bona fide* doubt exists is a decision which rests largely within the discretion of the trial court which, unlike the court of review, was in a position to observe the accused and evaluate his conduct. *People v. Murphy* (1978), 72 Ill. 2d 421, 426.

▪️ A defendant is presumed to be fit to stand trial and be sentenced. (Ill. Rev. Stat. 1981, ch. 38, par. 104—10.) Fitness for trial or sentencing consists of the two qualities enumerated in section 104—10 of the Code of Criminal Procedure of 1963: the ability of the accused to understand the nature and purpose of the proceedings against him and to assist in his defense. Ill. Rev. Stat. 1981, ch. 38, par. 104—10; *People v. Tilson* (1982), 108 Ill. App. 3d 973, 975.

Although the determination of whether there is a *bona fide* doubt of fitness depends upon the particular facts of the individual case (*People v. Murphy* (1978), 72 Ill. 2d 421, 435), certain well-defined principles have emerged which provide guidance. Fitness involves only the accused's ability to function within the context of the legal proceeding; it does not refer to competency in other areas. Thus, a defendant may be fit for trial even though his mind is otherwise unsound. (*People v. Murphy* (1978), 72 Ill. 2d 421, 432-33; *People v. Tilson* (1982), 108 Ill. App. 3d 973, 975.) No one factor in itself raises a *bona fide* doubt of the defendant's fitness to stand trial. (*People v. Davenport* (1980), 92 Ill. App. 3d 244, 246.) In particular, the mere fact that the accused suffers a mental disturbance or requires psychiatric treatment does not necessarily raise a *bona fide* doubt regarding his ability to understand the nature and purpose of the proceedings against him or to assist in his defense. (*People v. Heral* (1976), 62 Ill. 2d 329, 336; *People v. Jones* (1982), 109 Ill. App. 3d 120, 130.) Furthermore, prior mental problems or even prior commitment to a mental hospital do not by themselves raise a *bona fide* doubt of the defendant's fitness. (*People v. Jones* (1982), 109 Ill. App. 3d 102, 129-30.) In addition, the defendant's limited mental capacity does not require the trial court to question to accused's fitness. *People v. Murphy* (1978), 72 Ill. 2d 421, 432.

▪️ While the appointment of a conservator for defendant could have been on the basis of incapability of managing either person or

estate under the statute then in effect, the adjudication order appears to support the conclusion of the trial judge that the conservator was appointed in the civil matter for the purpose of managing his estate or affairs and not his person. The evidence at the hearing to withdraw the guilty plea supports the conclusion that the conservator managed only defendant's financial affairs.

We also note that the decisions on which the defendant principally relies involve feeble-minded persons adjudicated incompetent under a former provision which required that the party be incapable of managing both himself *and* his affairs. (See Ill. Rev. Stat. 1947, ch. 23, par. 346; *People ex rel. Wiseman v. Nierstheimer* (1948), 401 Ill. 260, 274.) In fact, defense counsel argues only that since defendant had been adjudicated incapable of managing his own affairs he also should have been presumed incapable of pleading guilty. We cannot agree with this general statement, which is unsupported.

Here, the trial judge's comments reveal that the defendant was advised of his rights under Supreme Court Rules 401(a) and 402(a) (87 Ill. 2d Rules 401(a), 402(a)) and stated that he understood them. The defendant himself testified during the hearing on his motion to withdraw his guilty pleas that he "pretty well" understood the rights the trial court indicated to him, including the charges to which he was pleading guilty. In denying the defendant's motion, the trial court properly remarked that a distinction existed between incompetency for purpose of managing one's affairs and the question whether an individual was unfit to enter guilty pleas to criminal charges. The court specifically found that the defendant "seemed fully aware" of what he was doing on the day he entered his guilty pleas and the court admonished him. Based on his observations of the defendant's conduct at the arraignment, the trial judge concluded that the defendant was sufficiently competent to understand substantially the information which the court conveyed to him.

In our opinion the court did not abuse its discretion in failing, *sua sponte*, to conduct a fitness hearing at the time the defendant pleaded guilty or thereafter. First, it is clear that the trial court did not know of the adjudication of incompetency with the appointment of a conservator of defendant's estate at the time the defendant pleaded guilty. In addition, apparently nothing about the defendant's conduct at the time he entered the guilty pleas demonstrated any indication of his unfitness to understand the nature of the charges against him or the purpose of the guilty plea proceedings. The trial judge had an ample opportunity to observe the defendant's demeanor, behavior and conversation during the guilty plea proceed-

ings, and again during the subsequent hearing on his motion to withdraw the pleas. We agree with the finding of the trial court that incompetency resulting in the appointment of a conservator of the estate in an unrelated civil context standing alone is insufficient to raise a *bona fide* doubt of defendant's fitness to plead guilty to the charges on this record.

Defendant's further argument that his waiver of counsel was invalid raises, however, a more difficult question which must be addressed.

■■ ■ The standards for waiver of counsel for a defendant presumed to be competent are set forth in Supreme Court Rule 401(a) (87 Ill. 2d R. 401(a)). The objective of Rule 401(a) is to provide a mechanism which will eliminate any doubt that an accused understands the nature and consequences of the charges brought against him before a trial court accepts his waiver of the right to counsel; the rule sets forth a procedure which precludes a defendant from waiving the assistance of counsel without full knowledge and understanding. (*People v. Feliciano* (1981), 93 Ill. App. 3d 642, 644; *People v. Myles* (1980), 83 Ill. App. 3d 843, 850, *rev'd on other grounds* (1981), 86 Ill. 2d 260; *People v. Brown* (1980), 80 Ill. App. 3d 616, 622; *People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 49.) It appears from the record that the trial court complied fully with the dictates of Rule 401(a). The defendant, in fact, has not argued in his brief that the court below failed to comply with the provisions of that rule.

It is also well established that the waiver of counsel should be carefully scrutinized. (*People v. Heral* (1976), 62 Ill. 2d 329, 336.) In determining whether there has been a valid waiver, the courts will indulge every reasonable presumption against waiver. (*People v. Myles* (1980), 83 Ill. App. 3d 843, 849, *rev'd on other grounds* (1981), 86 Ill. 2d 260.) The finding of waiver of counsel must not be made lightly. The record must demonstrate that the accused was offered counsel and knowingly and intelligently refused the offer. (*People v. Williams* (1981), 96 Ill. App. 3d 519, 523.) The trial court is required to conduct more than a routine inquiry when making that determination. *People v. Feliciano* (1981), 93 Ill. App. 3d 642, 645.

In addition to engaging in a colloquy with the accused, the trial court must determine for itself whether the defendant has the requisite capacity to make an intelligent and knowing waiver of his right to counsel. The criteria generally utilized in making that decision are the defendant's age, level of education, mental capacity, and prior involvement, if any, in legal proceedings. (*People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 49-50.) Based upon the particular circumstances of

the case and the above factors, the trial court must make a subjective evaluation of whether the defendant was aware of what he was doing. (*People v. Vanderwerff* (1978), 57 Ill. App. 3d 44, 50.) In reaching its decision, the trial court need not be convinced beyond a reasonable doubt, and the finding of the court on that issue will not be disturbed unless it is against the manifest weight of the evidence. *People v. Petty* (1977), 54 Ill. App. 3d 1044, 1050.

Defendant also argues that the pleas and waiver of counsel were invalid since the trial court did not inquire into defendant's competence to waive counsel at the time the court accepted the pleas. He argues that even if he were competent in the sense that he was able to understand the nature and purpose of the proceedings and to assist in his defense, there is a stronger presumption against waiver of counsel because of the importance of that right in preserving the free exercise of other constitutional rights. In fact, the defendant urges that we hold that a waiver of counsel should never be accepted from one who is found so mentally deficient as to be unable to manage his own affairs. Defendant relies principally on *Massey v. Moore* (1954), 348 U.S. 105, 108, 99 L. Ed. 135, 139, 75 S. Ct. 145, 147, and *Westbrook v. Arizona* (1966), 384 U.S. 150, 16 L. Ed. 2d 429, 86 S. Ct. 1320 (*per curiam*).

In *Westbrook*, the defendant, charged with murdering the attorney representing him in a civil case, waived counsel and unsuccessfully defended himself. In a very brief *per curiam* opinion, the United States Supreme Court reversed his conviction and remanded on the basis that although there had been a hearing on the issue of competence to stand trial, there appeared to have been no hearing or inquiry into the issue of his competence to waive his constitutional right to the assistance of counsel and to proceed to conduct his own defense. In *Massey*, which predates *Gideon v. Wainwright* (1963), 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792, the accused was forced to proceed *pro se* because he was too poor to retain an attorney, and was convicted of a felony carrying a mandatory life term, despite manifestations of possible insanity during trial. However, the *Massey* court did not have occasion to reach the separate issue of defendant's competence to waive counsel.

*Westbrook* did not define what kind of additional "hearing or inquiry" should have been conducted before the waiver of counsel was accepted, nor did the *Westbrook* court pause to explain how such a trial inquiry would differ from the hearing on defendant's competence to stand trial. The post-*Westbrook* cases have drawn different conclusions as to what in *Westbrook* necessitated the added inquiry

into defendant's competence to waive counsel—the waiver itself, defendant's self-representation at trial, or both in conjunction. See Note, *Competence to Plead Guilty: A New Standard,* 1974 Duke L.J. 149, 160-61.

In *People v. Heral* (1976), 62 Ill. 2d 329, 336, the Illinois Supreme Court adverted to whether *Westbrook v. Arizona* required that there be a separate and specific determination that an accused, found competent to stand trial, was also competent to enter a guilty plea. The court exhaustively reviewed the various opinions and writings which had construed *Westbrook* in various ways (see *People v. Heral* (1976), 62 Ill. 2d 329, 332-36), and held that there is not a dual standard as to competency to stand trial as compared to competency to enter a guilty plea since

> "a finding of competency to stand trial necessarily involves a finding that, with the advice and assistance of counsel, defendant is capable of waiving some or all of his constitutional rights, whether by a plea of guilty or during the course of his trial." (*People v. Heral* (1976), 62 Ill. 2d 329, 335.)

In *Heral,* however, because the defendant had counsel, the court found it unnecessary to decide whether competency to waive counsel involves a higher standard. 62 Ill. 2d 329, 336.

Here we are squarely confronted with the questions not directly decided in *Heral,* whether a separate inquiry and the application of a higher standard of competency is necessary and to waive counsel and to make the decision to plead guilty or stand trial *pro se.*

██ The competence to waive counsel is generally considered to require a stricter scrutiny than the standard to stand trial or to plead. See generally Winick & DeMeo, *Competence to Stand Trial in Florida,* 35 U. Miami L. Rev. 32, 72 (1980); Silten & Tullis, *Mental Competency in Criminal Proceedings,* 28 Hastings L.J. 1053, 1065-72 (1977); *United States ex rel. Konigsberg v. Vincent* (2d Cir. 1975), 526 F.2d 131, 133, *cert. denied* (1976), 426 U.S. 937, 49 L. Ed. 2d 388, 96 S. Ct. 2652; *State v. Williams* (1980), 228 Kan. 723, 728-29, 621 P.2d 423, 429; *Pickens v. State* (1980), 96 Wis. 2d 549, 567, 292 N.W.2d 601, 610.

*Pickens v. State,* in our view, appears to be particularly well reasoned. The standard for determining competency to stand trial is, as we have previously noted, whether one is able to understand the nature and purposes of the proceedings against him and to assist in his defense. (Ill. Rev. Stat. 1981, ch. 38, par. 104—10; *People v. Tilson* (1982), 108 Ill. App. 3d 973, 975.) The reference to the ability to "*assist* in his defense" (emphasis added) implies that more is required to

determine whether a defendant is able to conduct his own defense without aid of counsel than a mere inquiry into competence to stand trial with the assistance of counsel.[2] In *Pickens*, the court stated a standard for making a knowing and intelligent waiver which we believe is apt:

> "[W]e hold that in order for an accused's waiver of his right to counsel to be valid, the record must reflect not only his deliberate choice to proceed without counsel, but also his awareness of the difficulties and disadvantages of self-representation, the seriousness of the charge or charges he is facing and the general range of possible penalties that may be imposed if he is found guilty. Unless the record reveals the defendant's deliberate choice and his awareness of these facts, a knowing and voluntary waiver will not be found." (96 Wis. 2d 549, 563-64, 292 N.W.2d 601, 609.)

The *Pickens* court then went on to hold that when the defendant expresses a wish to waive counsel, it must also be determined whether he has the minimal competence necessary to proceed *pro se*. If he does not, the defendant may be prevented from proceeding *pro se* even though he has knowingly waived counsel. 96 Wis. 2d 549, 567-68, 292 N.W.2d 601, 610-11.

Turning to the present record, we first conclude that this defendant's waiver of counsel was properly accepted under the standard for waiver quoted above. There is no question that the court properly admonished the defendant who testified that he "pretty well" understood his rights. The judge noted at the hearing that the defendant at his arraignment seemed fully aware of what the court was saying and what the defendant was doing.

As to the defendant's competency to proceed *pro se*, the trial court made no separate finding, but the record shows that the defendant possessed the necessary minimal competence. The defendant was 27; he had been employed previously as indicated by the

---

[2]The Illinois Supreme Court has concluded that the "test of competency shall be the same whether the defendant is standing trial or pleading guilty," since a plea of guilty waives several Federal constitutional rights including the privilege against compulsory self-incrimination, the right to trial by jury and the right to confront one's accusers. (*People v. Heral* (1976), 62 Ill. 2d 329, 334.) We thus make no distinction here between the pleas of guilty and trial. It has also been suggested that although a plea of guilty does not involve all the complexities of a trial it requires the mental capacity to assess the strength and weaknesses of the prosecution's case, to make pretrial motions, conduct plea negotiation, offer evidence in mitigation and to decide whether to withdraw a plea of guilty. 28 Hastings L.J. 1053, 1074.

lapse of his unemployment benefits; he was able to answer responsively the questions asked at the later hearing on his motion to vacate; and he was familiar with the criminal justice system as shown by a recent conviction in the same county for driving while intoxicated. The fact that the defendant pleaded guilty did not demonstrate his unfitness to waive counsel and proceed *pro se*. See *People v. Teron* (1979), 23 Cal. 3d 103, 115, 151 Cal. Rptr. 633, 639, 588 P.2d 773, 779.

Under the standards that we have expressed the record assures us that the defendant had the competence necessary to make a deliberate and knowing choice to waive counsel upon an awareness of the facts, and to plead guilty in the absence of legal representation.

We therefore affirm the judgment of the circuit court of Carroll County.

Affirmed.

LINDBERG and UNVERZAGT, JJ., concur.